## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

WENDY LEE, individually and on behalf of all  )
others similarly situated,                    )
                                              )
                        Plaintiff,        )
                                              )
      v.                                    )      Civ. No. 13-834-SLR
                                              )
MARK PINCUS, JOHN SCHAPPERT,                  )
WILLIAM GORDON, REID HOFFMAN,                 )
JEFFREY KATZENBERG, STANLEY J.                )
MERESMAN, SUNIL PAUL, OWEN VAN                )
NATTA, MORGAN STANLEY & CO. LLC,              )
GOLDMAN, SACHS & CO., and ZYNGA INC.,         )
                                              )
                    Defendants.        )

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

PRICKETT, JONES & ELLIOTT, P.A.
Elizabeth M. McGeever (DE Bar I.D. 2057)
J. Clayton Athey (DE Bar I.D. 4378)
1310 King Street
Wilmington, Delaware  19801
(302) 888-6500

OF COUNSEL:

*Attorneys for Plaintiff*

Ethan D. Wohl
WOHL & FRUCHTER LLP
570 Lexington Avenue, 16th Floor
New York, New York 10022
(212) 758-4000

Dated:  May 29, 2013

# TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ....................................................................1

SUMMARY OF ARGUMENT ................................................................................................2

FACTUAL BACKGROUND ...................................................................................................2

ARGUMENT ........................................................................................................................5

I.   THIS ACTION SHOULD BE REMANDED TO THE COURT OF CHANCERY
     BECAUSE IT ALLEGES DIRECTOR SELF-DEALING THAT WAS FULLY
     DISCLOSED AND IS THEREFORE WHOLLY OUTSIDE THE AMBIT OF
     SLUSA...................................................................................................................5

     A.   Background and Operation of the SLUSA Statute ........................................5

     B.   Standards Governing Removal, Preclusion and Remand under SLUSA ......................6

     C.   SLUSA Applies When a Misrepresentation, Omission or Deceptive Device Is
          a "Factual Predicate" for the Plaintiff's Claim .............................................8

     D.   Defendants Cannot Invoke SLUSA by Imputing Allegations to Plaintiff That
          Appear Nowhere in Her Complaint and Do Not Serve as a Factual Predicate
          for Her Claims...................................................................................................8

     E.   Long-Settled Law Holds that Fiduciary Breaches Involving Disclosed Self-
          Dealing Are Outside the Ambit of the Federal Securities Laws, and Such
          Claims Are Therefore Not Precluded by SLUSA.........................................10

     F.   The Complaint Here Pleads Fully-Disclosed Self-Dealing and No Part of
          Plaintiff's Claims Alleges or Depends on Deception, Rendering SLUSA
          Entirely Inapplicable........................................................................................12

     G.   Other Cases Applying the Relevant Provisions of SLUSA Demonstrate That
          Defendants' Claim of SLUSA Preclusion Here Is Not Even Colorable.....................15

II.  REMOVAL OF THIS ACTION LACKED AN OBJECTIVELY REASONABLE
     BASIS AND PLAINTIFF SHOULD THEREFORE BE AWARDED HER COSTS
     AND EXPENSES, INCLUDING REASONABLE ATTORNEYS' FEES ........................18

CONCLUSION....................................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Alessi v. Beracha*,
    244 F. Supp. 2d 354 (D. Del. 2003)..........................................................................5, 6, 7, 12

*Appert v. Morgan Stanley Dean Witter, Inc.*,
    673 F.3d 609 (7th Cir. 2012) ..............................................................................................7

*Biesenbach v. Guenther*,
    588 F.2d 402 (3d Cir. 1978)...............................................................................................11

*Drulias v. Ade Corp.*,
    No. Civ.A. 06-11033 PBS, 2006 WL 1766502 (D. Mass. June 26, 2006) .............................11

*Fosnocht v. Demko*,
    438 F. Supp. 2d 561 (E.D. Pa. 2006) ..................................................................................19

*Gloucester Cnty. Imp. Auth. v. Gallenthin Realty Dev., Inc.*,
    C.A. No. 07-5328, 2008 WL 336784 (D.N.J. Feb. 5, 2008)...................................................19

*Golub v. Hilb, Rogal & Hobbs Co.*,
    379 F. Supp. 2d 639 (D. Del. 2005)...................................................................................6, 18

*Grund v. Del. Charter Guarantee & Trust Co.*,
    788 F. Supp. 2d 226 (S.D.N.Y. 2011)...........................................................................9, 17, 18

*Kircher v. Putnam Funds Trust*,
    547 U.S. 633 (2006)............................................................................................................5

*LaSala v. Bordier et Cie*,
    519 F.3d 121 (3d Cir. 2008).........................................................................................7, 8, 16, 18

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001)..............................................................................14, 15

*Martin v. Franklin Capital Corp.*,
    546 U.S. 132 (2005)........................................................................................................18, 19

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006)....................................................................................................7, 10, 11, 12

*Mints v. Educ. Testing Serv.*,
    99 F.3d 1253 (3d Cir. 1996)...............................................................................................19

*Missouri ex rel. Carnahan v. Stifel, Nicolaus & Co.*,
    648 F. Supp. 2d 1095 (E.D. Mo. 2009).................................................................................19

*Moe G. Enterprises, LLC v. Fontana*,
   C.A. No. 10-1538, 2011 WL 98553 (W.D. Pa. Jan. 12, 2011) ................................................19

*Norman v. Salomon Smith Barney Inc.*,
   350 F. Supp. 2d 382 (S.D.N.Y. 2004) ..........................................................................9, 16, 17

*Paru v. Mut. of Am. Life Ins. Co.*,
   No. 04 CIV. 6907 (JES), 2006 WL 1292828 (S.D.N.Y. May 11, 2006) ..........................9, 17

*Patterson v. Exxon Mobil Corp.*,
   262 F. Supp. 2d 453 (D.N.J. 2003) ..........................................................................................19

*Rowinski v. Salomon Smith Barney Inc.*,
   398 F.3d 294 (3d Cir. 2005) ......................................................................................... passim

*Santa Fe Indus. Inc. v. Green*,
   430 U.S. 462 (1977) ............................................................................................1, 11, 13, 14

*Siepel v. Bank of Am., N.A.*,
   239 F.R.D. 558 (E.D. Mo. 2006) ..............................................................................................8

*Smith v. Arthur Andersen LLP*,
   421 F.3d 989 (9th Cir. 2005) ....................................................................................................5

*Trustcash Holdings, Inc. v. Moss*,
   668 F. Supp. 2d 650 (D.N.J. 2009) ..........................................................................................14

*Tvia, Inc. v. Silva*,
   No. 08-1908 SC, 2008 WL 3843212 (N.D. Cal. Aug. 15, 2008) ...........................................19

*United States v. Haddy*,
   134 F.3d 542 (3d Cir. 1998) ....................................................................................................14

*Wilson v. Wells Fargo Advisors, LLC*,
   Civ. No. 11-511-SLR/SRF, 2012 WL 5240815 (D. Del. Sept. 25, 2012),
   *adopted by Wilson v. Wells Fargo Advisors, LLC*,
   Civ. No. 11-511-SLR/SRF, D.I. 19 (D. Del. Nov. 19, 2012) .........................................5, 8, 18

*Wolfe v. Lone Star Int'l Energy*,
   No. CIV.A.4:98-CV-1002-P, 1999 WL 1425391 (N.D. Tex. Oct. 11, 1999) .........................20

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*,
   341 F. Supp. 2d 258 (S.D.N.Y. 2004) .....................................................................................16

*Yellen v. Teledne Cont'l Motors, Inc.*,
   832 F. Supp. 2d 490 (E.D. Pa. 2011) ......................................................................................19

*Zoren v. Genesis Energy, L.P.*,
  195 F. Supp. 2d 598 (D. Del. 2002) .................................................................................6, 18

STATE CASES

*Breakaway Solutions, Inc. v. Morgan Stanley & Co.*,
  C.A. No. 19522, 2004 WL 1949300 (Del. Ch. Aug. 27, 2004) ...........................................9, 16

FEDERAL STATUTES AND RULES

15 U.S.C. § 77p .................................................................................................................................5

Securities Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j(b) ................................... passim

15 U.S.C. § 78bb .................................................................................................................5, 7, 15

28 U.S.C. § 1447(c) ....................................................................................................2, 5, 18, 19

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 ..............................................................................2, 10

OTHER AUTHORITIES

Larry E. Ribstein, *Dabit, Preemption, and Choice of Law*,
  2005-2006 Cato Sup. Ct. Rev. 141 ...........................................................................................12

S. Rep. No. 105-182 (May 4, 1998) ...............................................................................................12

## NATURE AND STAGE OF THE PROCEEDINGS

This is a class action on behalf of shareholders of Zynga Inc. ("Zynga" or the "Company"), a publicly-traded Delaware corporation, arising out of Defendants' selective, discriminatory waiver of lockup agreements and the Company's blackout policy following its initial public offering ("IPO"). Defendants' self-dealing conduct enabled Zynga's Chairman, Chief Executive Officer and controlling shareholder, together with other members of its board of directors (the "Board") to sell over $200 million of stock at the same time that Plaintiff and other stockholders were barred from selling any.

Defendants have removed this action from the Delaware Court of Chancery pursuant to the Securities Litigation Uniform Standards Act ("SLUSA"), which provides for the removal and dismissal of class actions asserting state-law causes of action based on misrepresentations, omissions and deceptive conduct in connection with the purchase or sale of securities.

Defendants have wrongfully removed this action without even a colorable basis.

As Plaintiff's Verified Class Action Complaint (the "Complaint" or "Compl.") makes clear, Plaintiff does not plead or even imply any deception of any kind on the part of any Defendant. To the contrary, the self-dealing at issue here was fully disclosed in the registration statements filed by Zynga with the Securities and Exchange Commission ("SEC"), which the Complaint cites at length – without ever questioning the accuracy or completeness of any statement made.

It has been long settled that fiduciary breaches are not actionable under the federal securities laws unless they involve deception or manipulation. *Santa Fe Indus. Inc. v. Green*, 430 U.S. 462, 474-77 (1977). It is now also well-established that the provisions defining the scope of preclusion under SLUSA are to be accorded the same meanings as the corresponding language in Section 10(b) of the Securities Exchange Act of 1934 ("Section 10(b)"), 15 U.S.C.

§ 78j(b), and Rule 10b-5 promulgated thereunder ("Rule 10b-5"), 17 C.F.R. § 240.10b-5. Defendants' asserted ground for removal of this action ignores both of these firm principles.

Costs, expenses and attorneys' fees are properly awarded pursuant to 28 U.S.C. § 1447(c) where the removing parties lack an objectively reasonable basis for seeking removal. This is such a case.

Accordingly, this case should be remanded to the Delaware Court of Chancery and Plaintiff should be awarded her costs and expenses, including reasonable attorneys' fees, on this motion.

## SUMMARY OF ARGUMENT

1. Removal under SLUSA is proper only if a misrepresentation, omission or deceptive device is a "factual predicate" for Plaintiff's claims. The Complaint here alleges and relies in no way on any misrepresentation, omission or deceptive device. As a result, Defendants have failed to demonstrate entitlement to removal under SLUSA, and Plaintiff's motion to remand should be granted.

2. In light of the total absence of any deceptive words or conduct in any way connected to Plaintiff's claims, Defendants lacked an objectively reasonable basis for seeking removal. Accordingly, costs and expenses, including reasonable attorneys' fees on this motion, should be granted pursuant to 28 U.S.C. § 1447(c).

## FACTUAL BACKGROUND

Plaintiff is a former employee of Zynga and received stock options in connection with her employment at the Company. Compl. ¶ 11. Plaintiff exercised her options prior to Zynga's December 2011 IPO, and she, like other stockholders, was barred by lockup agreements (the "Lockups") from selling her shares for 165 days following the IPO. *Id.* ¶¶ 2, 8, 11.

Less than 90 days after the IPO, however, Zynga announced that its Chairman, Chief Executive Officer and controlling shareholder, Defendant Mark Pincus ("Pincus"), together with other members of Zynga's Board and certain other senior executives and private equity investors, would sell over 40 million shares of stock in a secondary offering (the "Secondary Offering"), and that their Lockups would be waived to allow those sales to occur. *Id.* ¶¶ 3, 43-47. As required under the terms of the IPO underwriting agreement, the lead underwriters (the "Underwriter Defendants") consented to the selective waiver of the Lockups for Pincus and the other selling stockholders; the Underwriter Defendants then managed the Secondary Offering and each earned over $5 million in fees and commissions from doing so. *Id.* ¶¶ 4, 9, 48, 52.

In addition to selectively waiving the Lockups, the timing of the Secondary Offering required that Zynga waive its blackout policy (the "Blackout Policy"), which would have otherwise barred the sales by Pincus and other insiders. *Id.* ¶¶ 3, 49-50.

The Secondary Offering was completed two weeks later, yielding Pincus net proceeds of $192 million and paying three other directors – collectively comprising half of the Board – more than $17 million. *Id.* ¶¶ 3, 44-45.

While the Secondary Offering allowed members of Zynga's senior management and Board to cash out early, Zynga's non-executive and former employees, including Plaintiff, were not accorded the same opportunity. *Id.* ¶¶ 5, 49-51.

By the time non-executive employees were first permitted to sell, a month after the Secondary Offering occurred, Zynga's share price had dropped 29.5% from the Secondary Offering price. *Id.* ¶ 7. By the time the Lockups expired and Plaintiff and other former employees were first allowed to dispose of their shares, Zynga's share price had dropped 49.3% from the Secondary Offering price. *Id.*

By selling before the expiration of the Lockups, the selling Defendants thus nearly doubled the proceeds from their sales. Defendant Pincus alone received $91.5 million more than if he had been required, like Plaintiff and other former employees, to hold through the end of the Lockup period. *Id*. ¶¶ 8, 56.

This action thus challenges Defendants' selective, discriminatory waiver of the Lockups – pure self-dealing in breach of Defendants' fiduciary duty of loyalty. Plaintiff's Complaint sets forth two counts: (1) for breach of fiduciary duty by Zynga's directors, *i.e.*, that the Board members' discriminatory waiver of the Lockups to profit personally constituted a breach of their fiduciary duties to other Zynga shareholders; and (2) for aiding and abetting breach of fiduciary duty by the Underwriter Defendants, *i.e.*, the Underwriter Defendants' agreement to waive the Lockups – thereby generating additional underwriting fees and commissions for themselves – aided and abetted the Board members' breach of fiduciary duties. *See id*. ¶¶ 65-76.

The Complaint alleges no misrepresentations, omissions or deceptive conduct of any kind. Indeed, as the Complaint makes clear, to the best of Plaintiff's current knowledge, Defendants completely and candidly told her and the world in their filings with the SEC exactly what they were doing. *See id.* ¶¶ 35-53. This action thus seeks to apply long-standing state law prohibitions against director self-dealing to a new set of facts: the selective, discriminatory waiver of lockup agreements to provide early liquidity for senior executives (and additional fees for the underwriters) while precluding less privileged shareholders the same opportunity and forcing them to bear the risk of future adverse developments in the stock market.

Plaintiff filed her Complaint in the Delaware Court of Chancery on April 4, 2013. The members of the Board (the "Director Defendants") and Zynga filed their Notice of Removal (the

"Removal Notice") (D.I. 1) on May 10, 2013.  This motion to remand is timely under 28 U.S.C. § 1447(c).

## ARGUMENT

I.  **THIS ACTION SHOULD BE REMANDED TO THE COURT OF CHANCERY BECAUSE IT ALLEGES DIRECTOR SELF-DEALING THAT WAS FULLY DISCLOSED AND IS THEREFORE WHOLLY OUTSIDE THE AMBIT OF SLUSA**

A.  **Background and Operation of the SLUSA Statute**

As this Court has previously explained, SLUSA was enacted to prevent plaintiffs from filing securities class actions in state court to avoid the heightened standards imposed by the Private Securities Litigation Reform Act of 1995.  *Alessi v. Beracha*, 244 F. Supp. 2d 354, 356-57 (D. Del. 2003).

SLUSA provides for the removal to federal court of securities class actions within its ambit and then "provides that they cannot be maintained in any state or federal court in the United States."  *Id.* at 357.[1]

The text of SLUSA is codified in relevant part at 15 U.S.C. § 78bb(f).[2]

_____

[1] As Magistrate Judge Fallon noted last year in *Wilson v. Wells Fargo Advisors, LLC*, Civ. No. 11-511-SLR/SRF, 2012 WL 5240815, at *4 n.5 (D. Del. Sept. 25, 2012), *adopted by Wilson v. Wells Fargo Advisors, LLC*, Civ. No. 11-511-SLR/SRF, D.I. 19 (D. Del. Nov. 19, 2012), the Supreme Court has subsequently explained that while SLUSA's bar on certain class actions "is often called a preemption provision" it is more properly termed a "preclusion provision" because it "does not itself displace state law with federal law but makes some state-law claims nonactionable through the class-action device in federal as well as state court."  *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 636 n.1 (2006).

[2] A "functionally identical" provision is codified as part of the Securities Act of 1933 at 15 U.S.C. § 77p.  *See Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1007 (9th Cir. 2005).  However, the provision at 15 U.S.C. § 78bb is the one predominantly cited by courts.

The text of 15 U.S.C. § 78bb(f) is set forth in relevant part in the margin.[3]

**B.      Standards Governing Removal,
        Preclusion and Remand under SLUSA**

As this Court has stated on several occasions, SLUSA "mandates removal and then

dismissal of any: (1) covered class action; (2) based on state law; (3) alleging a misrepresentation

or omission of a material fact or act of deception; (4) in connection with the purchase or sale of a

---

[3]  (f) Limitations on remedies
  (1) Class action limitations
    No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
      (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
      (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.
  (2) Removal of covered class actions
    Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).
  (3) Preservation of certain actions--
      (A) Actions under State law of State of incorporation
        (i) Actions preserved
          Notwithstanding paragraph (1) or (2), a covered class action described in clause (ii) of this subparagraph that is based upon the statutory or common law of the State in which the issuer is incorporated (in the case of a corporation) or organized (in the case of any other entity) may be maintained in a State or Federal court by a private party.
        (ii) Permissible actions
          A covered class action is described in this clause if it involves—
          (I) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or
          (II) any recommendation, position, or other communication with respect to the sale of securities of an issuer that—
            (aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and
            (bb) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.
      . . .
      (D) Remand of removed actions
        In an action that has been removed from a State court pursuant to paragraph (2), if the Federal court determines that the action may be maintained in State court pursuant to this subsection, the Federal court shall remand such action to such State court.

covered security." *Golub v. Hilb, Rogal & Hobbs Co.*, 379 F. Supp. 2d 639, 642 (D. Del. 2005); *Alessi*, 244 F. Supp. 2d at 357; *Zoren v. Genesis Energy, L.P.*, 195 F. Supp. 2d 598, 603 (D. Del. 2002).

The Third Circuit has subsequently adopted a similar standard, holding that "[t]o be preempted by SLUSA an action must (1) make use of a procedural vehicle akin to a class action, and (2) allege a misrepresentation or deceptive device in connection with a securities trade." *LaSala v. Bordier et Cie*, 519 F.3d 121, 128 (3d Cir. 2008) (footnotes omitted).

As with any removal of an action from state court, under SLUSA, "[t]he removing party bears the burden of establishing these elements." *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 298 (3d Cir. 2005); *Alessi*, 244 F. Supp. 2d at 356. Remand is mandatory where SLUSA does not apply: "[i]n an action that has been removed from a State court pursuant to paragraph (2), if the Federal court determines that the action may be maintained in State court pursuant to this subsection, the Federal court shall remand such action to such State court." 15 U.S.C. § 78bb(f)(3)(D).

As this Court has observed, "[i]n enacting SLUSA, Congress evinced a clear intent toward broad application of the Act." *Alessi*, 244 F. Supp. 2d at 357. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 72 (2006) (overruling Second Circuit decision that limited the reach of SLUSA by engrafting the "standing" limitation on private federal securities actions adopted in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975)).

Mindful of the "general presumption that Congress does not cavalierly pre-empt state law causes of action," *Dabit*, 547 U.S. at 87 (quotation marks and alteration omitted), however, courts do not extend the reach of SLUSA beyond the statute's plain language. *E.g., Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 616 (7th Cir. 2012) (holding SLUSA did not

- 7 -

apply to state law claims based on contract involving misrepresentations where the misrepresentations at issue were not "material").

### C. SLUSA Applies When a Misrepresentation, Omission or Deceptive Device Is a "Factual Predicate" for the Plaintiff's Claim

When analyzing a complaint to determine whether it is subject to removal and dismissal under SLUSA, the Third Circuit has directed that the district court determine whether "an allegation of a misrepresentation in connection with a securities trade is a 'factual predicate' of the claim, even if misrepresentation is not a legal element of the claim." *LaSala*, 519 F.3d at 141 (quoting *Rowinski*, 398 F.3d at 300). Under this standard, the proper focus is on *what the plaintiff needs to show to establish her right to relief*:

> To be a factual predicate, the fact of a misrepresentation must be one that gives rise to liability, not merely an extraneous detail. This distinction is important because complaints are often filled with more information than is necessary. While it may be unwise (and, in some cases, a violation of Rule 8) to set out extraneous allegations of misrepresentations in a complaint, the inclusion of such extraneous allegations does not operate to require that the complaint must be dismissed under SLUSA.

*Id. Accord Rowinski*, 398 F.3d at 300 (under SLUSA, "preemption does not turn on whether allegations are characterized as facts or as essential legal elements of a claim, but rather on whether the SLUSA prerequisites are 'alleged' in one form or another. . . . Where, as here, allegations of a material misrepresentation serve as the factual predicate of a state law claim, the misrepresentation prong is satisfied under SLUSA.").

### D. Defendants Cannot Invoke SLUSA by Imputing Allegations to Plaintiff That Appear Nowhere in Her Complaint and Do Not Serve as a Factual Predicate for Her Claims

Consistent with the Third Circuit's focus on what the plaintiff needs to allege to establish her claim, judges in this District and elsewhere have emphasized that "[a]lthough courts must 'be wary of efforts to circumvent SLUSA through artful pleading' when conducting the SLUSA

preclusion analysis, the converse is also true." *Wilson*, 2012 WL 5240815, at \*5 (quoting *Siepel v. Bank of Am., N.A.*, 239 F.R.D. 558, 567-68 (E.D. Mo. 2006)).

Other courts have held the same. *See Grund v. Del. Charter Guarantee & Trust Co.*, 788 F. Supp. 2d 226, 241-242 (S.D.N.Y. 2011) ("Courts have held that it is the allegations made in the complaint that form the basis of their SLUSA analysis: because the determination of whether SLUSA applies may only be made by reference to what a party has alleged, and not what it could have alleged, courts should be wary of a defendant's attempts to recast the plaintiff's complaint as a securities lawsuit in order to have it preempted by SLUSA.") (internal quotation marks and alteration omitted); *Paru v. Mut. of Am. Life Ins. Co.*, No. 04 CIV. 6907 (JES), 2006 WL 1292828, at \*3 (S.D.N.Y. May 11, 2006) ("While this Court is mindful that plaintiff may not escape SLUSA preemption through artful pleading meant to disguise allegations of misstatements or omissions, it is similarly mindful that defendant may not recast plaintiff's Complaint as a securities fraud class action so as to have it preempted by SLUSA."); *Norman v. Salomon Smith Barney Inc.*, 350 F. Supp. 2d 382, 386 (S.D.N.Y. 2004) ("While plaintiffs may not avoid SLUSA pre-emption simply by artful pleading that avoids the actual words 'misrepresentation' or 'fraud,' neither may defendants avoid every possible claim by recasting any lawsuit in which a securities broker is a defendant into a securities fraud action."); *Breakaway Solutions, Inc. v. Morgan Stanley & Co.*, C.A. No. 19522, 2004 WL 1949300, at \*3 (Del. Ch. Aug. 27, 2004) (rejecting defendants' analysis because "it necessarily reads facts into the Complaint which are not present" and "[t]he Court's charge at this stage of the proceedings is to interpret the Complaint as written, not as it might have been written.").

### E.   Long-Settled Law Holds that Fiduciary Breaches Involving Disclosed Self-Dealing Are Outside the Ambit of the Federal Securities Laws, and Such Claims Are Therefore Not Precluded by SLUSA

As shown in the margin,[4] the operative language of SLUSA at issue here closely tracks Section 10(b) and Rule 10b-5.  As observed by the Third Circuit, "[t]his language [in SLUSA] mirrors existing federal securities law under § 10(b) and Rule 10b-5 of the 1934 Act." *Rowinski*, 398 F.3d at 299.

As both the Supreme Court and Third Circuit have emphasized, words and phrases in SLUSA that track Section 10(b) and Rule 10b-5 should be accorded the same meaning. *Dabit*, 547 U.S. at 86 (observing that "[g]enerally, identical words used in different parts of the same statute are presumed to have the same meaning" and construing the phrase "in connection with the purchase or sale" in SLUSA to have its settled meaning under Section 10(b)) (internal quotation marks and alterations omitted); *Rowinski*, 398 F.3d at 299 (same).  SLUSA thereby

---

[4]  The relevant provisions are as follows (emphasis added):

| Section 10(b) and Rule 10b-5 | SLUSA |
|---|---|
| It shall be unlawful for any person, . . .<br><br>(b) To ***use or employ***, in connection with the purchase or sale of any security . . . ***any manipulative or deceptive device or contrivance*** . . . | No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—<br><br>(A) a ***misrepresentation or omission of a material fact*** in connection with the purchase or sale of a covered security; or<br><br>(B) ***that the defendant used or employed any manipulative or deceptive device or contrivance*** in connection with the purchase or sale of a covered security. |
| It shall be unlawful for any person, . . .<br><br>(a) To employ any ***device, scheme, or artifice to defraud***, [or]<br><br>(b) To make any ***untrue statement of a material fact or to omit to state a material fact*** necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, . . . . | |

"furthers the uniform application of federal fraud standards without expanding or constricting the substantive reach of federal securities regulation."  *Rowinski*, 398 F.3d at 299.

It has been settled law for over 35 years that the federal securities laws do not reach breaches of fiduciary duty that do not involve deception.  *Santa Fe Indus. Inc. v. Green*, 430 U.S. 462, 478-80 (1977) ("short form" merger under Delaware law that did not involve misrepresentation or omission was not within the scope of Section 10(b)).  Indeed, as reflected by the Third Circuit's decision in *Biesenbach v. Guenther*, 588 F.2d 402 (3d Cir. 1978), courts have consistently rejected efforts to federalize state-law fiduciary duty claims, holding that misstatements ancillary to such claims are also non-actionable.  *See id.* ("In effect, appellants are stating that the failure to disclose the breach of fiduciary duty is a misrepresentation sufficient to constitute a violation of the Act. We refuse to adopt this approach which would clearly circumvent the Supreme Court's holding in *Santa Fe*.").

As reflected by the authorities above, there is no suggestion that SLUSA was intended to preclude established state-law claims historically recognized to fall outside the ambit of the federal securities laws.  Indeed, the Supreme Court emphasized in *Dabit* that "[t]his is hardly a situation, then, in which a federal statute has eliminated a historically entrenched state-law remedy."  547 U.S. at 88.  And the Third Circuit underscored in *Rowinski*, in the context of determining the reach of SLUSA, that "Federal securities law is circumscribed, and strikes a balance between uniform regulation of a national market and preservation of those areas 'traditionally left to state regulation,' such as *corporate*, contract and *fiduciary* law."  398 F.3d at 301 (quoting *Santa Fe*, 430 U.S. at 479) (emphasis added).  *See also Drulias v. Ade Corp.*, No. Civ.A. 06-11033 PBS, 2006 WL 1766502, at *2 (D. Mass. June 26, 2006) (holding that "SLUSA does not apply to the breach of fiduciary claim based on conflict of interest" and observing that

"[w]hile the Supreme Court recently embraced a broad interpretation of SLUSA, it did not suggest that all claims of breach of fiduciary duty in connection with the purchase or sale of securities are sucked into the SLUSA sluice").

Any effort to have SLUSA sweep more broadly than Section 10(b) and preclude state law fiduciary claims not involving deception would be inconsistent with SLUSA's express legislative intent.   As the Supreme Court recognized in *Dabit*, SLUSA "carefully exempts from its operation certain class actions based on the law of the State in which the issuer of the covered security is incorporated," 547 U.S. at 87.  *See also Alessi v. Beracha*, 244 F. Supp. 2d 354, 359 (D. Del. 2003) (quoting S. Rep. No. 105-182, at 6 (May 4, 1998), stating that "[t]he Committee is keenly aware of the importance of state corporate law"); Larry E. Ribstein, Dabit*, Preemption, and Choice of Law*, 2005-2006 Cato Sup. Ct. Rev. 141, 158 (quoting S. Rep. No. 105-182 and observing that "[t]he legislative history of this exception indicates that Congress was reluctant to invade the states' realm of regulating corporate governance and fiduciary duties of directors and wanted to preserve the expertise and efficiency of Delaware courts and case law").

Given the settled principle that terms used in both SLUSA and Section 10(b) have the same meanings, as well as the care with which Congress preserved existing state law remedies relating to disclosure, it would be perverse indeed to hold that Congress intended SLUSA to reach out beyond the established scope of federal securities law to preclude state law fiduciary claims having nothing to do with deceptive words or conduct.

> **F.    The Complaint Here Pleads Fully-Disclosed Self-Dealing and No Part of Plaintiff's Claims Alleges or Depends on Deception, Rendering SLUSA Entirely Inapplicable**

Here, the Complaint in no way even suggests a misrepresentation, omission or any deceptive conduct.  Plaintiff alleges that the Director Defendants wrongfully favored their interests over hers by waiving the Lockups for themselves but not for her in violation of their

- 12 -

fiduciary duty of loyalty, and that the Underwriter Defendants aided and abetted that breach.  As

the Complaint makes clear, there was no deception of anyone, and not even concealment of the

selective, discriminatory conduct at issue in the case.  Indeed, the relevant facts in the Complaint

are all drawn from the IPO and Secondary Offering registration statements issued by Defendants,

and there is no suggestion anywhere in the Complaint that any of Defendants' statements were

untrue.

Defendants' Removal Notice asserts two grounds purportedly supporting a finding that

this action was removable and Plaintiff's claims are subject to SLUSA preclusion.  Neither is

even colorable.

First, Defendants assert as follows:

> Plaintiff alleges that the March 28, 2012 secondary offering was "designed
> to" and "had the purpose and effect of" allowing certain Director
> Defendants to "reap large profits from the sale of Zynga stock" by
> allowing them to sell some of their stock before Plaintiff was permitted to
> sell her stock. (*Id.* ¶ 67.) Plaintiff further alleges that Defendants' decision
> to allow the Director Defendants to sell Zynga stock while other
> employees were prohibited from selling Zynga stock was "discriminatory"
> and allowed the Director Defendants to "profit personally" at "the expense
> of other shareholders" who could not sell until a later date.  (*Id.* ¶¶ 10, 41.)
> These are allegations of a "manipulative or deceptive device or
> contrivance" under SLUSA.

Removal Notice ¶ 16.

On their face, none of these statements even suggests deception of anyone.  Regarding

the claim that the self-dealing at issue was "manipulative," the Supreme Court foreclosed this

argument in *Santa Fe*.  There, it was presented with a similar argument that a fiduciary breach

involving fully-disclosed disloyal conduct was "manipulative" within the meaning of Section

10(b) and flatly rejected it:

> It is also readily apparent that the conduct alleged in the complaint was not
> 'manipulative' within the meaning of the statute. ***'Manipulation' is***

> ***'virtually a term of art when used in connection with securities markets.'***
> The term refers generally to practices, such as wash sales, matched orders,
> or rigged prices, that are intended to mislead investors by artificially
> affecting market activity.  Section 10(b)'s general prohibition of practices
> deemed by the SEC to be 'manipulative' in this technical sense of
> artificially affecting market activity in order to mislead investors is fully
> consistent with the fundamental purpose of the 1934 Act to substitute a
> philosophy of full disclosure for the philosophy of caveat emptor.  Indeed,
> ***nondisclosure is usually essential to the success of a manipulative
> scheme.  No doubt Congress meant to prohibit the full range of
> ingenious devices that might be used to manipulate securities prices.
> But we do not think it would have chosen this 'term of art' if it had
> meant to bring within the scope of §10(b) instances of corporate
> mismanagement such as this, in which the essence of the complaint is
> that shareholders were treated unfairly by a fiduciary.***

430 U.S. 462, 476-77 (emphasis added).

This has been the undisputed law of the land ever since.  *See United States v. Haddy*, 134 F.3d 542, 550 (3d Cir. 1998) ("In [*Santa Fe*], the Supreme Court offered that manipulation is virtually a term of art in securities law and refers to conduct artificially affecting market activity in order to mislead investors. The activity described here falls within the confines of this description."); *Trustcash Holdings, Inc. v. Moss*, 668 F. Supp. 2d 650, 663 (D.N.J. 2009) ("The Supreme Court has described market manipulation as 'virtually a term of art when used in connection with securities markets. The term refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity.' . . .  Plaintiffs do not allege any similar claim for market manipulation here.").

The one and only case Defendants cite in support of their position, *In re Livent, Inc. Noteholders Securities Litigation*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001), provides no basis whatsoever for any claim of SLUSA preclusion here.  Livent was one of the most prominent frauds of its day and the complaint at issue there asserted claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Sections 11, 12(a)(2) and 15 of the Securities Act of

1933, *id.* at 438-42, as well as four state-law counts, three of which were based explicitly on the

defendants' misrepresentations and were undisputedly precluded by SLUSA. *Id*. at 437-43. The

fourth count, for tortious interference, while not requiring deception as a *legal* element of the

claim, had deceptive conduct as its *factual* predicate. As explained by the court, the tortious

interference pled there constituted a "claim that defendants committed fraud in connection with a

contract to re-purchase the Notes" and was therefore also barred by SLUSA. *Id.* at 443.

Defendants' second claim stretches even further, asserting:

> In addition, Plaintiff alleges that certain of the Director Defendants were
> allowed to sell their stock before Zynga's shares "began a precipitous
> decline" over a two-month period. (Compl. ¶¶ 54-55.) Plaintiff
> complains that current employees were subject to Zynga's blackout policy,
> which barred them from selling during part of this period. (Compl. ¶¶ 49-
> 50.) Any state law claim asserted on behalf of a proposed class alleging
> that certain of the Directors Defendants sold stock while in possession of
> material non-public information, and without disclosing that material non-
> public information, is barred by SLUSA. 15 U.S.C. § 78bb(f)(1)(A).

Removal Notice ¶ 17.

As Defendants appear to concede, the Complaint itself makes no claim whatsoever that

Defendants knew that Zynga stock would decline in value, and its claims of fiduciary breach and

aiding and abetting in no way depend on that.

Accordingly, Defendants' assertion that Plaintiff's claims are precluded by SLUSA is

contradicted by a large body of settled law, and Defendants have offered no colorable legal

support for their decision to remove this action.

### G.    Other Cases Applying the Relevant Provisions of SLUSA Demonstrate That Defendants' Claim of SLUSA Preclusion Here Is Not Even Colorable

The absence of any support for Defendants' position is further demonstrated by the

substantial body of case law finding no SLUSA preclusion, even when elements of deception

appear in the complaint or are part of the underlying conduct, so long as they are not "factual

predicates" for the plaintiff's claims.  These cases stand in sharp contrast to the present facts – where *no* deception has been pled, deception has *no* role in the underlying conduct, and the complaint instead alleges fully-disclosed self-dealing by corporate fiduciaries.

In *LaSala*, the Third Circuit held that Swiss-law claims against banks for failure to investigate insiders' alleged "classic 'pump-and-dump' scheme" were not preempted by the insiders' misrepresentations because such misrepresentations "have no bearing on whether the Banks' conduct is actionable; rather, they are merely background details that need not have been alleged, and need not be proved."  *LaSala v. Bordier et Cie*, 519 F.3d 121, 126, 141 (3d Cir. 2008).  Thus, despite the presence of a fraudulent scheme, SLUSA was not implicated where the claims against the named defendants did not rely on misrepresentations or deceptive conduct by them.

In *Breakaway Solutions, Inc. v. Morgan Stanley & Co.*, C.A. No. 19522, 2004 WL 1949300 (Del. Ch. Aug. 27, 2004), the Court of Chancery held that a securities issuer's claims against underwriters who allegedly steered IPO shares to favored clients and then received kickbacks from them were not precluded by SLUSA.  While the defendants asserted that the claims were premised on the existence of "secret side agreements" to resell shares, the Court rejected the defendants' attempt to supplement the complaint, holding that "the Complaint speaks solely of a dispute related to performance of duties imposed by the Agreement and state law that has not been preempted by SLUSA."  *Id.* at *8-9.

The same conclusion was reached, on similar facts and for much the same reasons, by the court in *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258 (S.D.N.Y. 2004).

In *Norman v. Salomon Smith Barney Inc.*, 350 F. Supp. 2d 382, 386 (S.D.N.Y. 2004), the plaintiffs, brokerage customers, pled state law claims based on broker recommendations that were allegedly tainted by undisclosed conflicts of interest.  Despite the concealed nature of the conflicts, the court held that SLUSA did not apply, as "the gravamen of the Complaint is plainly a straightforward breach claim: plaintiffs purchased a service (portfolio management) pursuant to a contract, paid the fees for that service under the contract, and now allege that they did not receive the full range of services paid for, and suffered damages as a result" and "further allege that, in the course of providing some of the contracted-for services, defendant breached its fiduciary duty to plaintiffs to act in their best interests and not engage in activities that would place its interests in conflict with theirs."  *Id.* at 387.  The court noted that the plaintiffs did not allege they ever saw or relied on the tainted reports; "Plaintiffs' claim is simply that Salomon said it would do something in exchange for plaintiffs' fees, and then didn't do what it had promised."  *Id.*

In *Paru v. Mutual of America Life Insurance Co.*, No. 04 CIV. 6907 (JES), 2006 WL 1292828, at *3 (S.D.N.Y. May 11, 2006), the court similarly addressed a claim of undisclosed "market timing" – a practice through which certain investors exploited an inefficiency in the pricing of mutual funds – and rejected the defendants' efforts to recast the complaint as alleging deception, holding that "Plaintiff in this case has alleged that defendant had a fiduciary obligation to take certain measures to protect the long term viability of plaintiff's investments, defendant failed to do so, and such failure resulted in plaintiff being harmed."  *Id.* at *5.  Accordingly, SLUSA did not preclude the claims.  *Id.*

Finally, in *Grund v. Delaware Charter Guarantee & Trust Co.*, 788 F. Supp. 2d 226 (S.D.N.Y. 2011), investors sued a trust company that placed their funds in a Ponzi scheme.  The

complaint pled fiduciary breaches, negligence and unjust enrichment; "[n]o claim [was] made of misrepresentation or omission or the employment of a single manipulative or deceptive device in connection with the purchase or sale of a single covered security." *Id.* at 240. As a result, like in *LaSala*, the claims were not precluded by SLUSA. *Id.* at 242-43.

By contrast, cases in which courts have held SLUSA preclusion to apply have consistently involved some form of misrepresentation or deceptive act as the basis for the claim at issue. *See Rowinski*, 398 F.3d at 299 ("Plaintiff's complaint is replete with allegations that Salomon Smith Barney disseminated biased and materially misleading investment research."); *Wilson v. Wells Fargo Advisors, LLC*, Civ. No. 11-511-SLR/SRF, 2012 WL 5240815, at *6-7 (D. Del. Sept. 25, 2012) (listing allegations of misrepresentations in the complaint), *adopted by Wilson v. Wells Fargo Advisors, LLC*, Civ. No. 11-511-SLR/SRF, D.I. 19 (D. Del. Nov. 19, 2012); *Golub v. Hilb, Rogal & Hobbs Co.*, 379 F. Supp. 2d 639, 644 (D. Del. 2005) (same); *Zoren v. Genesis Energy, L.P.*, 195 F. Supp. 2d 598, 601 (D. Del. 2002) (same).

## II. REMOVAL OF THIS ACTION LACKED AN OBJECTIVELY REASONABLE BASIS AND PLAINTIFF SHOULD THEREFORE BE AWARDED HER COSTS AND EXPENSES, INCLUDING REASONABLE ATTORNEYS' FEES

As shown above, Defendants had no objectively reasonable basis to remove this action. The Supreme Court has held that pursuant to 28 U.S.C. § 1447(c), a district court can award attorneys' fees and other costs and expenses "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005). In formulating this standard, the Supreme Court explained:

> The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff. The appropriate test for awarding fees under § 1447(c) should recognize the

> desire to deter removals sought for the purpose of prolonging litigation
> and imposing costs on the opposing party, while not undermining
> Congress' basic decision to afford defendants a right to remove as a
> general matter, when the statutory criteria are satisfied.

*Id.* at 140.

A district court "has broad discretion and may be flexible in determining whether to require the payment of fees under section 1447(c)." *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir. 1996).  Further, a "district court may require the payment of fees and costs by a party which removed a case which the court then remanded, even though the party removing the case did not act in bad faith." *Id.*

District courts in this Circuit have on multiple occasions awarded fees, costs and expenses when presented with similarly meritless removal notices.  *See Mints*, 99 F.3d at 1260 (affirming award of fees and costs after finding that there was "no colorable basis" for defendant's removal where plaintiff in employment termination case brought action under state statutory and common law, and made no claim that defendant violated federal law); *Yellen v. Teledne Cont'l Motors, Inc.*, 832 F. Supp. 2d 490, 498-99, 508 (E.D. Pa. 2011) (awarding fees where defendants sought to invoke federal jurisdiction by "recasting plaintiffs' complaint as a challenge to the FAA, the Federal Aviation Act, or [Federal Aviation Regulations]" but were "unable to muster a reference to one paragraph in the original complaint in which plaintiffs allegedly launch, expressly or impliedly, an attack" on the federal aviation regime); *see also Moe G. Enterprises, LLC v. Fontana*, C.A. No. 10-1538, 2011 WL 98553, at *6-8 (W.D. Pa. Jan. 12, 2011); *Gloucester Cnty. Imp. Auth. v. Gallenthin Realty Dev., Inc.*, C.A. No. 07-5328, 2008 WL 336784, at *7-9 (D.N.J. Feb. 5, 2008); *Fosnocht v. Demko*, 438 F. Supp. 2d 561, 565 (E.D. Pa. 2006); *Patterson v. Exxon Mobil Corp.*, 262 F. Supp. 2d 453, 467-68 (D.N.J. 2003).

Courts have also awarded fees, costs and expenses in cases involving removal pursuant to SLUSA.  *See Missouri ex rel. Carnahan v. Stifel, Nicolaus & Co.*, 648 F. Supp. 2d 1095, 1099 (E.D. Mo. 2009); *Tvia, Inc. v. Silva*, No. 08-1908 SC, 2008 WL 3843212, at *6-9 (N.D. Cal. Aug. 15, 2008) (SLUSA, among other grounds); *Wolfe v. Lone Star Int'l Energy*, No. CIV.A.4:98-CV-1002-P, 1999 WL 1425391, at *1-2 (N.D. Tex. Oct. 11, 1999).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court remand this case to the Delaware Court of Chancery and award to Plaintiff her costs and expenses, including reasonable attorneys' fees.

PRICKETT, JONES & ELLIOTT, P.A.

OF COUNSEL:

WOHL & FRUCHTER LLP
Ethan D. Wohl
570 Lexington Avenue, 16th Floor
New York, New York 10022
(212) 758-4000

Dated:  May 29, 2013

By: /s/ Elizabeth M. McGeever
   Elizabeth M. McGeever (DE Bar I.D. 2057)
   J. Clayton Athey (DE Bar I.D. 4378)
   1310 King Street
   Wilmington, Delaware 19801
   (302) 888-6500
   *Attorneys for Plaintiff*

- 20 -