IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| WENDY LEE, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>MARK PINCUS, JOHN SCHAPPERT, WILLIAM GORDON, REID HOFFMAN, JEFFREY KATZENBERG, STANLEY J. MERESMAN, SUNIL PAUL, OWEN VAN NATTA, MORGAN STANLEY & CO. LLC, GOLDMAN, SACHS & CO., and ZYNGA INC.,<br><br>        Defendants. | Case No. 13-834-SLR |

## REPLY BRIEF IN SUPPORT OF ZYNGA DEFENDANTS' MOTION TO DISMISS

MORRISON & FOERSTER LLP

Jordan Eth
Anna Erickson White
Kevin A. Calia
425 Market Street
San Francisco, CA  94105-2482
(415) 268-7000
jeth@mofo.com
awhite@mofo.com
kcalia@mofo.com

Dated:  July 8, 2013

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Danielle Gibbs (No. 3698)
Nicholas Rohrer (No. 5381)
Robert M. Vrana (No. 5666)
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
dgibbs@ycst.com
nrohrer@ycst.com
rvrana@ycst.com

*Attorneys for Defendants*
*Mark Pincus, John Schappert, William*
*Gordon, Reid Hoffman, Jeffrey Katzenberg,*
*Stanley J. Meresman, Sunil Paul, Owen Van*
*Natta, and Zynga Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 1

I.  THERE IS NO EXCEPTION TO SLUSA PRECLUSION FOR "FULLY-DISCLOSED" BREACH OF FIDUCIARY DUTY CLAIMS. ........................................ 1

II. PLAINTIFF'S CLAIMS ARE PRECLUDED BY SLUSA. ............................................. 3

    A.  This Action Involves Allegations of a "Manipulative" Act Under SLUSA. ................................................................................................................ 4

    B.  This Action Involves Allegations of a "Deceptive" Act Under SLUSA. ................................................................................................................ 5

    C.  This Action Also Involves Allegations of a "Misrepresentation or Omission of Material Fact" in Connection with the Sale of Zynga Stock. ................................................................................................................. 8

III. PRECLUSION WILL NOT LEAVE PLAINTIFF WITHOUT A REMEDY. .................................................................................................................. 9

CONCLUSION ........................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Biesenbach v. Guenther*,
   588 F.2d 400 (3d Cir. 1978)..................................................................................................8

*CompuDyne Corp. v. Shane*,
   453 F. Supp. 2d 807 (S.D.N.Y. 2006).................................................................................5

*GFL Advantage Fund, Ltd. v. Colkitt*,
   272 F.3d 189 (3d Cir. 2001)..................................................................................................5

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001).................................................................................6

*In re NYSE Specialists Sec. Litig.*,
   405 F. Supp. 2d 281 (S.D.N.Y. 2005).................................................................................4

*LaSala v. Bordier et Cie*,
   519 F.3d 121 (3d Cir. 2006)............................................................................................3, 8

*Matrixx Initiatives, Inc. v. Siracusano*,
   131 S. Ct. 1309 (2011)..........................................................................................................9

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
   547 U.S. 71 (2006).................................................................................................1, 2, 8, 10

*Rowinski v. Salomon Smith Barney Inc.*,
   398 F.3d 294 (3d Cir. 2005)..............................................................................................7, 8

*Santa Fe Indus., Inc. v. Green*,
   430 U.S. 462 (1977)..........................................................................................................2, 5

*SEC v. Zandford*,
   535 U.S. 813 (2002)..............................................................................................................5

*Segal v. Fifth Third Bank, N.A.*,
   581 F.3d 305 (6th Cir. 2009) ...............................................................................................7

*Thorpe v. CERBCO, Inc.*,
   676 A.2d 436 (Del. 1996) ....................................................................................................9

*Triton Const. Co. v. E. Shore Elec. Servs., Inc.*,
   No. 3290-VCP,
   2009 WL 1387115 (Del. Ch. May 18, 2009)...................................................................9

*United States v. Bongiorno*,
   No. 05 Cr. 390(SHS),
   2006 WL 1140864 (S.D.N.Y. May 1, 2006) ........................................................................7, 8

*United States v. Finnerty*,
   No. 05 Cr.393 DC,
   2006 WL 2802042 (S.D.N.Y. Oct. 2, 2006) ....................................................................5, 7, 8

**STATUTES**

15 U.S.C. § 78bb ................................................................................................................... 1, 2

**OTHER AUTHORITIES**

17 C.F.R. § 240.10b-5 ............................................................................................................... 5

Sand, *Modern Federal Jury Instructions*, Instr. 57-22 ................................................................ 6

# INTRODUCTION

Plaintiff argues for an impermissibly narrow reading of Section 10(b) and of the types of state law class action claims precluded by SLUSA. Plaintiff's primary argument is that a "fully-disclosed" breach of fiduciary duty claim can never be precluded by SLUSA. Plaintiff, however, fails to cite a single case that refused to apply SLUSA on this ground. Nor can Plaintiff distinguish *NYSE Specialists* and *Livent*. Just as in those cases, Plaintiff's state law claims are precluded by SLUSA because they involve allegations of manipulative or deceptive conduct.

As shown below, and in the Zynga Defendants' opening brief, Plaintiff alleges "manipulative" conduct, "deceptive" conduct, and misrepresentations or omissions in connection with the sale of Zynga stock. Any one of these three types of allegations is, by itself, enough to require preclusion under SLUSA. Plaintiff has made all three types of allegations here. Her state law class action claims should therefore be dismissed.

# ARGUMENT

## I.   THERE IS NO EXCEPTION TO SLUSA PRECLUSION FOR "FULLY-DISCLOSED" BREACH OF FIDUCIARY DUTY CLAIMS.

SLUSA precludes state law class action claims that involve allegations of the use of a "manipulative" or "deceptive" device, or a misrepresentation or omission, in connection with the purchase or sale of nationally traded securities. 15 U.S.C. § 78bb(f)(1)-(2); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 82-83 (2006). Congress created several "tailored exceptions" to preclusion under SLUSA. *Id.* at 87. For example, exclusively derivative actions are excluded from SLUSA's coverage. 15 U.S.C. § 78bb(f)(3)(C). Another exception, often called the "Delaware carve-out," prevents preclusion of claims involving certain transactions between a corporation and its current shareholders and claims involving communications to shareholders regarding voting, appraisal rights, or certain corporate

1

transactions, such as tender offers and exchange offers. 15 U.S.C. § 78bb(f)(3)(A)(ii). Where these exceptions do not apply, the Supreme Court has recognized that "Congress envisioned a broad construction" of SLUSA and that a "narrow reading of the statute would undercut the effectiveness of the 1995 Reform Act." *Dabit*, 547 U.S. at 86.

Plaintiff does not argue that any of the established carve-outs applies here. She does not contend that her claims involve the transactions or communications covered by the Delaware carve-out, and she explicitly disclaims that her action is a derivative action. (D.I. 18 at 12 n.3.) Plaintiff nevertheless claims that SLUSA does not preclude her "traditional state law causes of action." (D.I. 18 at 11.)

Plaintiff effectively asks this Court to create a new, broad exception to SLUSA's coverage—for "fully-disclosed" breach of fiduciary duty claims. (D.I. 18 at 11-12.) In creating the "tailored exceptions" to SLUSA's coverage, Congress has already decided which state law claims should be preserved and which should be precluded. *See Dabit*, 547 U.S. at 87-88 ("The existence of these carve-outs both evinces congressional sensitivity to state prerogatives in this field and makes it inappropriate for courts to create additional, implied exceptions."). Adding new exceptions would thwart the important federal interest in creating uniform standards that led Congress to pass SLUSA. *See id*. at 78 ("The magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated.").[1] Plaintiff's state law class action claims are among those that Congress decided to preclude under SLUSA.

---

[1] More than twenty years before SLUSA was passed, in a case heavily relied on by Plaintiff, the Supreme Court stated that "[t]here may well be a need for uniform federal fiduciary standards" to govern certain transactions, but cautioned that those standards should be supplied by Congress rather than the courts. *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479-80 (1977). Congress answered the call when it passed SLUSA.

2

## II. PLAINTIFF'S CLAIMS ARE PRECLUDED BY SLUSA.

There are three separate reasons that Plaintiff's claims fall within the set of claims that are precluded by SLUSA: (1) she alleges "manipulative" conduct; (2) she alleges "deceptive" conduct; and (3) she implicitly alleges a misrepresentation or omission. Any one of these three types of allegations would, by itself, lead to preclusion. Plaintiff alleges all three.

Plaintiff argues that the so-called "factual predicate standard" prevents her claims from being precluded. (D.I. 18 at 3 (citing *LaSala v. Bordier et Cie*, 519 F.3d 121, 141 (3d Cir. 2006)).) As explained in the Zynga Defendants' opening brief, however, the factual allegations regarding the timing, structure, and purpose of the Secondary Offering and the Director Defendants' release from their lockup agreements are the "factual predicate" of Plaintiff's claims. (D.I. 14 at 14 n.7.) Plaintiff's complaint alleges:

- The Secondary Offering was "designed to favor" the Director Defendants "at the expense of Zynga's other shareholders" and had the "purpose" of giving them "preferential treatment" and allowing them to "reap large profits" (Compl. ¶ 67);

- The Secondary Offering was destined to have a "negative impact" on Zynga's stock price (Compl. ¶¶ 39-40);

- There was a "precipitous decline" in the price of Zynga's stock during the two-month period "[i]mmediately following the Secondary Offering" (Compl. ¶¶ 54-55); and

- Shareholders were told that "substantially all" of Zynga's stock was subject to lockup agreements that expired at the same time (Compl. ¶ 35), but then the Director Defendants released themselves from the lockup agreements early (Compl. ¶ 67).

These are the allegations that, according to Plaintiff, give rise to liability. They are the heart of Plaintiff's complaint, not "an extraneous detail." *Cf. LaSala*, 519 F.3d at 141.

Plaintiff's dispute over the legal significance of her allegations—whether they amount to allegations of "manipulation" or "deception"— does not change the *factual* predicate of Plaintiff's claims. As shown below, Plaintiff's allegations are precluded by SLUSA.

### A. This Action Involves Allegations of a "Manipulative" Act Under SLUSA.

*In re NYSE Specialists Securities Litigation*, 405 F. Supp. 2d 281, 292, 306-08 (S.D.N.Y. 2005), shows why Plaintiff's allegations involve "manipulative" conduct and are therefore precluded by SLUSA. Rather than distinguish this case from *NYSE Specialists*, Plaintiff says the court "did not analyze why the conduct at issue was actionable under Section 10(b) and Rule 10b-5." (D.I. 18 at 6.) In fact, the court held that a breach of fiduciary duty claim brought against the specialists ("Count Four" or "the fourth claim") was precluded by SLUSA because it "stems from alleged manipulative conduct." *NYSE Specialists*, 405 F. Supp. 2d at 307. Specifically, the alleged "manipulative conduct" included "trading ahead" or "filling public orders from the specialist's own firm accounts ahead of the orders received from customers." *Id.* at 292. To give a concrete example, if a customer placed an order to sell stock, the specialist allegedly sold the same stock from his own account before processing the customer's order, taking the highest available price and causing the customer to sell his stock at a lower price.

Plaintiff's allegations of a breach of fiduciary duty likewise stem from alleged manipulative conduct. Plaintiff says the Director Defendants knew sales of a substantial number of shares would occur after the lockup agreements expired. (Compl. ¶ 37.) She then alleges that the Director Defendants structured the Secondary Offering to enable themselves to sell before other shareholders, and at higher prices at the expense of the other shareholders, who were still subject to the lockup agreements. (Compl. ¶ 67.) Just as in *NYSE Specialists*, Plaintiff's state law claims based on such allegations are precluded by SLUSA. 405 F. Supp. 2d at 292, 306-08 (state law claims precluded where specialists allegedly knew of customers' orders and then sold before the customers, receiving a higher sale price to the customer's disadvantage).

Plaintiff attempts to avoid the result in *NYSE Specialists* by arguing for a narrow definition of "market manipulation" as the only "manipulative" conduct that triggers preclusion

under SLUSA. (D.I. 18 at 5.) Plaintiff's narrow focus, however, is inconsistent with the broad definition of securities fraud adopted by the Supreme Court, the SEC, and numerous cases. *See, e.g.*, 17 C.F.R. § 240.10b-5(a), (c) (prohibiting "**any** device, scheme, or artifice to defraud" and "**any** act, practice, or course of business which operates or would operate as a fraud or deceit upon any person") (emphasis added); *Santa Fe*, 430 U.S. at 477 ("Congress meant to prohibit the full range of ingenious devices that might be used to manipulate securities prices").

Plaintiff ignores the cases cited in the Zynga Defendants' brief (D.I. 14 at 12) that applied Section 10(b) and Rule 10b-5(a) and (c) broadly to reach **any** manipulative act in furtherance of an alleged scheme to defraud. These cases follow the Supreme Court's repeated instructions that Section 10(b) and Rule 10b-5 should be "construed 'not technically and restrictively, but flexibly to effectuate its remedial purposes.'" *SEC v. Zandford*, 535 U.S. 813, 819 (2002). The Third Circuit's discussion of the elements of "market manipulation" in *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 205 (3d Cir. 2001), does not define the full breadth of all "manipulative" conduct that falls within the scope of Section 10(b) or SLUSA. Rather, "market manipulation" is a subset of the "manipulative" conduct that is prohibited. *See, e.g.*, *United States v. Finnerty*, No. 05 Cr.393 DC, 2006 WL 2802042, at *3 (S.D.N.Y. Oct. 2, 2006) ("the scope of prohibited conduct under subsections (a) and (c) is quite expansive") (citing cases); *CompuDyne Corp. v. Shane*, 453 F. Supp. 2d 807, 821 (S.D.N.Y. 2006). Plaintiff's argument that Section 10(b) and SLUSA apply only in narrowly defined circumstances runs directly contrary to the authoritative instructions from the Supreme Court and the many cases applying them.

   **B.**  **This Action Involves Allegations of a "Deceptive" Act Under SLUSA.**

Plaintiff's claims are also precluded by SLUSA because they rest on allegations of deceptive conduct. Plaintiff admits that either "words or actions" can be deceptive within the meaning of Section 10(b) and SLUSA. (D.I. 18 at 6.) Plaintiff, however, ignores her own

allegations of deceptive actions.

In attempting to distinguish *Livent*, Plaintiff appears to contend that the allegedly deceptive conduct there was not publicly disclosed. (D.I. 18 at 8.) Plaintiff, however, cannot deny that the conduct the court found to be deceptive, and thus to require preclusion under SLUSA, was that defendants "allegedly demoted and suspended rather than fired Drabinsky and Gottlieb" as part of a plan to "subvert" the bondholders' right to demand full payment if those executives had been fired. *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 443 (S.D.N.Y. 2001). Nor can Plaintiff deny that Livent issued a press release announcing that "Drabinsky and Gottlieb had been suspended." *Id.* at 390.

In *Livent*, as here, the defendants publicly and accurately disclosed precisely what they were doing. The accurate public disclosure that they had suspended (rather than fired) Drabinsky and Gottlieb, however, did not prevent the court from finding that plaintiff had alleged "deceptive" conduct that, under SLUSA, required preclusion of a state law claim for tortious interference with contract. *Id.* at 443.

Plaintiff takes issue with the court's conclusion in *Livent* that these allegations amounted to a claim "that defendants committed fraud." (D.I. 18 at 8.) But that is exactly the point. Under Section 10(b) and Rule 10b-5, "fraud" is a broad concept that "embraces all ingenious efforts and means that individuals devise to take advantage of others." Sand, *Modern Federal Jury Instructions*, Instr. 57-22. Plaintiff alleges that the Director Defendants took advantage of her by arranging an early release from their lockup agreements and selling some of their stock while Plaintiff was still subject to a lockup agreement. (Compl. ¶¶ 41, 67.) Just as in *Livent*, Plaintiff's allegations of publicly-disclosed facts that allegedly operated to subvert her rights fit within the broad definitions of "fraud" and "deceptive" conduct.

*Bongiorno* and *Finnerty* also show that conduct, including actions taken openly, can be deceptive. In both cases, the courts found that the defendants' conduct in "trading ahead" fit within the definition of "deception." The courts reasoned that the specialists' customers were "misled into believing that their orders were being matched, and that their interests were being placed above defendants' interests." *Finnerty*, 2006 WL 2802042, at *5; *see also United States v. Bongiorno*, No. 05 Cr. 390(SHS), 2006 WL 1140864, at *7 (S.D.N.Y. May 1, 2006). This was misleading because rules required the specialists to "place the interests of their public customers above their own." *Finnerty*, 2006 WL 2802042, at *4. "Rather than abide by these rules, defendants allegedly made a profit for themselves, and subordinated the interests of the trading public below their own." *Id.* Plaintiff likewise alleges that the Director Defendants violated a rule that required them to place the interests of other shareholders ahead of their own interests by arranging the Secondary Offering and the lockup release to profit at the expense of other shareholders. (Compl. ¶¶ 66-68.) These are allegations of deceptive conduct.

Plaintiff argues that her complaint avoids using the word "misled." (D.I. 18 at 9.) Plaintiff's strategic omission of certain words from her complaint, however, cannot prevent preclusion of these claims. *See Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 304 (3d Cir. 2005); *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310 (6th Cir. 2009) (court "must look to . . . the substance of [the] allegations" and not simply "search through the pages of the complaint for magic words").

Plaintiff's own argument demonstrates that she is claiming she was "misled" in the same way as the customers in *Bongiorno* and *Finnerty*. Plaintiff argues that the members of her proposed class had "the expectation that they would be treated fairly by the Defendants, who owed them fiduciary duties." (D.I. 18 at 13.) Plaintiff complains that these expectations were

7

not fulfilled, because the Director Defendants modified their lockup agreements so that the Director Defendants were released earlier than other shareholders and thereby "favor[ed]" themselves "at the expense of" those other shareholders. (Compl. ¶¶ 35, 47-51, 67.) Under the reasoning in *Bongiorno* and *Finnerty*, Plaintiff's allegations that the structure of the Secondary Offering and the Director Defendants' release from their lockup agreements operated to thwart her expectations are allegations of deceptive conduct that trigger preclusion under SLUSA.

### C. This Action Also Involves Allegations of a "Misrepresentation or Omission of Material Fact" in Connection with the Sale of Zynga Stock.

Plaintiff also implicitly alleges a misrepresentation or omission. Both *Rowinski* and *LaSala* recognized that implicit allegations of a misrepresentation or omission in connection with the sale of stock require preclusion under SLUSA. *Rowinski*, 398 F.3d at 304; *LaSala*, 519 F.3d at 141 (SLUSA's requirement will be satisfied by "implicit or explicit" allegation of misrepresentation). Plaintiff does not dispute this point.

Instead, Plaintiff argues that her implicit allegation of a misrepresentation about the purpose of the Secondary Offering does not count because, according to Plaintiff, the statement is "nonactionable" under Section 10(b). (D.I. 18 at 8.) Plaintiff's only support for this argument is a case involving derivative claims that was decided twenty years before Congress enacted SLUSA. (D.I. 18 at 8-9 (citing *Biesenbach v. Guenther*, 588 F.2d 400 (3d Cir. 1978)).) Plaintiff's argument is wrong for two reasons. First, whether the alleged misrepresentation is actionable does not determine whether Plaintiff's claims are precluded. *Dabit*, 547 U.S. at 84 (claims that were not actionable under Section 10(b) precluded by SLUSA). Second, *Biesenbach* does not support Plaintiff's argument that the alleged misrepresentation is not actionable where, rather than remaining silent about the specific purpose of the Secondary Offering, Zynga's registration statement described purposes that differ from what Plaintiff claims was the true

8

purpose. *See, e.g.*, *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1321-22 (2011) ("[s]ilence, absent a duty to disclose, is not misleading," but disclosure is required when necessary to prevent statements made by defendant from being misleading) (quoting 17 C.F.R. § 240.10b5(b)).

Plaintiff's effort to avoid her implicit allegations of insider trading also fails. Plaintiff argues that "disgorgement is widely applied as a remedy for fiduciary breaches," but she ignores that the profits to be disgorged must "emanat[e] from" the alleged breach. (D.I. 18 at 10.) Even the cases cited by Plaintiff demonstrate this point. *Thorpe v. CERBCO, Inc.*, 676 A.2d 436, 444 (Del. 1996) ("transactional damages" inappropriate because alleged breach was not "proximate cause of the nonconsummation of the transaction"); *Triton Const. Co. v. E. Shore Elec. Servs., Inc.*, No. 3290-VCP, 2009 WL 1387115, at *27-28 (Del. Ch. May 18, 2009) (injury "caused by" breach was profit from two projects, not profit from 195 projects requested by plaintiff). Plaintiff seeks as "disgorgement" the losses avoided, in hindsight, given the declines in Zynga's stock price during the two months between the Secondary Offering and the originally-scheduled expiration of the lockup agreements. (Compl. ¶¶ 54-56.) Without allegations of insider trading, however, declines in Zynga's stock price in the two months after the Secondary Offering have no causal relationship to the alleged breach of fiduciary duty. Plaintiff's effort to recover based on those declines in Zynga's stock price cannot succeed unless Plaintiff is alleging insider trading.

### III. PRECLUSION WILL NOT LEAVE PLAINTIFF WITHOUT A REMEDY.

Plaintiff acknowledges that numerous other investors have brought claims for federal securities fraud based on the same events at issue here. She argues, however, that it does not matter that "other parties who purchased at other times may have a fraud claim." (D.I. 18 at 9, 11-12.) She says the members of her proposed class "are not members of the classes asserting federal securities claims" and "have no possible claim for fraud" because they purchased their

9

shares before Zynga's IPO. (D.I. 18 at 2.) Plaintiff therefore argues that preclusion would be "profoundly unfair" because it would leave her "without any remedy at all." (D.I. 18 at 11-12.)

The Supreme Court has unanimously rejected this argument. In *Dabit*, the plaintiff brought a breach of fiduciary duty claim alleging that "misrepresentations and manipulative tactics" caused investors to hold certain stocks that they would have otherwise sold. 547 U.S. at 75-76. Because the proposed class members did not purchase their stock during the period of the alleged fraud, they did not meet the purchaser-seller requirement and could not bring a private action under Section 10(b). The plaintiff thus argued that the language of SLUSA "must be read narrowly to encompass . . . only those actions in which the purchaser-seller requirement of *Blue Chip Stamps* is met." *Id.* at 84. But the Supreme Court held that the state law class action claims were precluded by SLUSA. *Id.* at 89 ("identity of the plaintiffs does not determine whether the complaint alleges fraud 'in connection with the purchase or sale' of securities").

Like the plaintiff in *Dabit*, Plaintiff seeks to represent a class of "holders" bringing a state law claim for breach of fiduciary duty. (D.I. 18 at 12 (proposed class "held their shares . . . prior to the time of the IPO").) Allowing Plaintiff to pursue these class claims based on state law, however, would result in "wasteful, duplicative litigation" and "parallel class actions proceeding in state and federal court, with different standards governing claims asserted on identical facts." *Dabit*, 547 U.S. at 86-87. The Court should therefore dismiss Plaintiff's claims.

As explained in *Dabit*, this result does not leave Plaintiff without a remedy: "SLUSA does not actually pre-empt any state cause of action. It simply denies plaintiffs the right to use the class-action device to vindicate certain claims." *Id.* at 87.

## CONCLUSION

This action is precluded by SLUSA and should be dismissed.

10

Dated: July 8, 2013

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Danielle Gibbs*
Danielle Gibbs (No. 3698)
Nicholas Rohrer (No. 5381)
Robert M. Vrana (No. 5666)
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
dgibbs@ycst.com
nrohrer@ycst.com
rvrana@ycst.com

MORRISON & FOERSTER LLP
Jordan Eth
Anna Erickson White
Kevin A. Calia
425 Market Street
San Francisco, CA  94105-2482
(415) 268-7000
jeth@mofo.com
awhite@mofo.com
kcalia@mofo.com

*Attorneys for Defendants Mark Pincus, John Schappert, William Gordon, Reid Hoffman, Jeffrey Katzenberg, Stanley J. Meresman, Sunil Paul, Owen Van Natta, and Zynga Inc.*

## **CERTIFICATE OF SERVICE**

I, Danielle Gibbs, Esquire, hereby certify that on July 8, 2013, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Elizabeth M. McGeever, Esq.
J. Clayton Athey, Esq.
PRICKETT, JONES & ELLIOTT, P.A.
1310 King Street
Wilmington, DE 19801
emmcgeever@prickett.com
jcathey@prickett.com

Gregory V. Varallo, Esq.
Thomas A. Uebler, Esq.
Robert L. Burns, Esq.
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
varallo@rlf.com
uebler@rlf.com
burns@rlf.com

I further certify that on July 8, 2013, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel.

*/s/ Danielle Gibbs*
Danielle Gibbs (No. 3698)

01:13604112.1